UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARON TELFAIR

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

LE PAIN Quotidien US, Vincent Herbert,

Thomas Hallen, Heather Bias Holland,

Alain Coumont

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

# 16 CV 5424

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial:  ☑ Yes  ☐ No
*(check one)*

2016 JUL -7  PM 2: 2

S.D. OF N.Y.

RECEIVED
SDNY PRO SE OFFICE

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

___V___    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e
to 2000e-17 (race, color, gender, religion, national origin).
*NOTE:  In order to bring suit in federal district court under Title VII, you must first obtain a
Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

___V___    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§
621 - 634.
*NOTE:  In order to bring suit in federal district court under the Age Discrimination in
Employment Act, you must first file a charge with the Equal Employment Opportunity
Commission.*

_____    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 -
12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act,
you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity
Commission.*

___V___    New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297  (age,
race, creed, color, national origin, sexual orientation, military status, sex,
disability, predisposing genetic chacteristics, marital status).

___V___    New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to
131 (actual or perceived age, race, creed, color, national origin, gender,
disability, marital status, partnership status, sexual orientation, alienage,
citizenship status).

*Rev. 05/2010*                    1

## I.    Parties in this complaint:

A.    List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff      Name    SHARON TELFAIR

Street Address    107 Smiley Lane

County, City    Stroudsburg    PA

State & Zip Code    PA    18360

Telephone Number    570 - 801 - 0101

B.    List all defendants' names and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant    Name    LE PAIN Quotidien, Vincent Herbert, THOMAS Hallen, Alain Coumont, Heather Bias HOLLAND

Street Address    50 Broad Street, 12TH FLOOR

County, City    New YORK

State & Zip Code    New York 10004

Telephone Number    212 - 359 - 9000

C.    The address at which I sought employment or was employed by the defendant(s) is:

Employer    LE PAIN Quotidien

Street Address    434 Broadway 3RD FLOOR New York, NY 10013

County, City    New York

State & Zip Code    New York 10013

Telephone Number    (212) 226 - 2131  /  212 - 359 - 9000

## II.    Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events. Describe how you were discriminated against. If you are pursuing claims under other federal or state statutes, you should include facts to support those claims. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____    Failure to hire me.

___✓___    Termination of my employment.

_____    Failure to promote me.

_____    Failure to accommodate my disability.

___✓___    Unequal terms and conditions of my employment.

_____✓_____  Retaliation.

_____✓_____  Other acts (specify): Violation of Public Policy /Whistleblowing

**Note:**   *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.   It is my best recollection that the alleged discriminatory acts occurred on: <u>Jan - Feb 2013</u> .
                                                                           *Date(s)*

     MARCH - JULY 2013

C.   I believe that defendant(s) *(check one)*:

     _____   is still committing these acts against me.

     ___✓____   is not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

     ☑  race   <u>BLACK</u>                    ☑  color   <u>African American</u>

     ☑  gender/sex   <u>FEMALE</u>             ☐  religion_____

     ☐  national origin _____

     ☑  age.   My date of birth is <u>04/05/1967</u>   *(Give your date of birth only if you are asserting a claim of age discrimination.)*

     ☐  disability or perceived disability, _____  *(specify)*

E.   The facts of my case are as follow *(attach additional sheets as necessary)*:

     a) WRONGFUL TERMination based upon retalation and sabotage

     b) Defamation of character

     c) Discrimination based upon race, sex

     D) Violation of Public Policy

     E) Whistleblowing (whistle Blower)

     Bring forthclaim under both the NY State Division of Human Rights, Federal court/law and the NYC commission on Human Rights

     **Note:**   *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.   Exhaustion of Federal Administrative Remedies:

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: <u>March 13, 2014</u>   (3/14/2014)   *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

___✓___    issued a Notice of Right to Sue letter, which I received on _April 11, 2016_ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _Bring forth claims under both the Federal Law and the New York City Council / Human Rights, Punitive damages / cost in the amount of $2 million USD ($ 2,000,000.00)_
*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _7th_ day of _July_, 20_16_.

Signature of Plaintiff    _Sharon Telfair_

Address    _107 Smiley Lane_
_Stroudsburg PA 18360_

Telephone Number    _570-801-0101_

Fax Number *(if you have one)* _____

*Rev. 05/2010*                                4



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

**Charging Party**
Sharon Telfair
c/o Rick Ostrove, Esq.
Leeds Brown Law, PC
One Old Country Road
Suite 347
Carle Place, NY 11514-1851

**Respondent**
Le Pain Quotidien
c/o Peter T. Shapiro, Esq.
Lewis, Brisbois, Bisgaard & Smith LLP
77 Water Street
Suite 2100
New York, NY 10005

EEOC Charge No. 570-2014-00853

## DETERMINATION

I issue the following determination on the merits of the subject charge. Le Pain Quotidien is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the Age in Discrimination Act of 1967, as amended. Le Pain Quotidien is herein referred to as Respondent. Sharon Telfair is herein referred to as Charging Party. All requirements for coverage have been met.

Charging Party alleged Respondent subjected her to discrimination with respect to her salary and compensation in connection to her age and race (black).

She further alleged that she opposed race discrimination and was retaliated against for engaging in a protected activity. Charging Party alleged that Respondent's Vice President of Human Resources Heather Holland (Holland), told her that Human Resources Managers, Mary Ann Nissen and Jessica Eth (both white), would not feel comfortable reporting to an African American woman. She alleged that following her opposition to Holland, she was retaliated against through exclusion and then terminated several months later. Charging Party alleged that after expressing her opposition to Holland's comments, Respondent promoted Mary Ann Nissen (age 50) and Jessica Eth (age 32), to eliminate the possibility that they would have to report to Charging Party.

Respondent denied all of Charging Party's allegations, in that she was treated disparately in connection to age and race or that she engaged in a protected activity. Respondent denies Charging Party was subjected to compensation discrimination because she was paid more not less than similarly situated Human Resources Directors. Respondent claims that even if Charging Party complained, in January 2013, too much time elapsed between her alleged complaint and termination, to infer it was retaliatory. Respondent alleges Charging Party cannot prove she was discharged for pretextual reasons, because she was discharged due to her inadequate performance.

Respondent identified two Human Resources Directors as Charging Party's comparators, Mary Nissen (Nissen) and Jessica Eth (Eth).  Both Nissen and Eth are white females, who were employed as Human Resources Managers before Respondent promoted them to Human Resources Directors.

The EEOC requested information from Respondent, but Respondent did not produce a complete response.  In EEOC's request for information, Respondent was notified that failure to provide a complete response could result in an adverse inference.  Notwithstanding the EEOC's request and warning to Respondent, it chose against producing salary documents that would have revealed whether or not Respondent treated Charging Party the same or as favorable as Nissen and Eth, with regard to compensation.  Respondent chose against producing bonus and salary documentation for the years that Nissen and Eth performed as Human Resources Directors.

A review of the records that were produced by Respondent showed that, Respondent offered and paid Nissen and Eth a bonus at the time of hire and/or in connection with their performance.  Respondent did not assert or produce payroll or performance documentation to show it offered or paid Charging Party a bonus at the time of hire and/or in connection with her performance.

Regarding Charging Party's termination, the Commission's investigation supports that Charging Party engaged in a protected activity and that the same person to whom she reported her opposition to discriminatory practices, was the person who terminated her.  Respondent did not produce evidence to support its assertion that Charging Party was terminated because she could no longer be a productive member of the team.

Based on the above, Respondent's asserted defenses do not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that Respondent has discriminated against Charging Party in connection to her race and terminated her in  retaliation for engaging in a protected activity.

This determination is final. Title VII requires that, if the Commission determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.  Having determined that there is reason to believe that violations have occurred, the Commission now invites Respondent to join with it in an effort toward a just resolution of this matter.  Enclosed is a letter outlining the proposed terms of conciliation.

Disclosure of information obtained by the Commission during the conciliation process may only be made in accordance with Title VII and the Commission's Procedural Regulations.  The confidentiality provisions of Sections 706 and 709 of Title VII and Commission Regulations apply to information obtained during conciliation.

If Respondent declines to enter into conciliation discussions, or when the Commission's representative is unable to secure an acceptable conciliation agreement, the Director shall so inform the parties, advising them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission:

MAR 3 0 2016

Kevin J. Berry
District Director

Date

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination.** When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

**1. Personal Information**

5 70-2014-00853 N

Last Name: TELFAIR          First Name: SHARON          MI: _____

Street or Mailing Address: 5204 EAGLE RIDGE DRIVE          Apt or Unit #: _____

City: SCOTRUN          County: _____          State: PA   Zip: 18355

Phone Numbers: Home: (___) _____          Work: (___) _____

Cell: (570) 801-0101          Email Address: stelfair01@yahoo.com

Date of Birth: 04/05/1967          Sex: ☐ Male ☑ Female          Do You Have a Disability? ☐ Yes ☐ No

**Please answer each of the next three questions.**   i. Are you Hispanic or Latino? ☐ Yes ☑ No

ii. What is your Race?   Please choose all that apply. ☐ American Indian or Alaskan Native   ☐ Asian   ☐ White

☑ Black or African American   ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? ___ USA ___

**Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:**

Name: EDNA M. BLUE          Relationship: _____

Address: 440 L Street NW #910   City: Washington   State: DC   Zip Code: 20001

Home Phone: (202) 962-0948          Other Phone: (___) _____

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply.)

☑ Employer   ☐ Union   ☐ Employment Agency   ☐ Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: LE PAIN Quotidien

Address: 434 BROADWAY          County: _____

City: NEW YORK          State: NY   Zip: 10013   Phone: (___) _____

Type of Business: RESTAURANT/BAKERY HOSPITALITY   Job Location if different from Org. Address: _____

Human Resources Director or Owner Name: _____          Phone: (___) _____

**Number of Employees in the Organization at All Locations:** Please Check (✓) One

☐ Fewer Than 15    ☐ 15 – 100    ☐ 101 – 200    ☐ 201 – 500    ☑ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) **Are you a federal employee?** ☐ Yes ☑ No

Date Hired: 8/20/2012          Job Title At Hire: Payroll Manager (Contractor) convert Director of HR ADMIN

Pay Rate When Hired: $50.00 per hour   Last or Current Pay Rate: $130,000 per annum

Job Title at Time of Alleged Discrimination: DIRECTOR OF HR ADMIN   Date Quit/Discharged: 7/29/2013

Name and Title of Immediate Supervisor: HEATHER BIAS-HOLLAND

If Job Applicant, Date You Applied for Job ___ N/A ___   Job Title Applied For ___ N/A ___

1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☒ Race  ☒ Sex  ☒ Age  ☐ Disability  ☐ National Origin  ☐ Religion  ☒ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _BLACK (African American )_

If you checked genetic information, how did the employer obtain the genetic information? _N/A._

Other reason (basis) for discrimination (Explain): _Violation of Public Policy_

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. **Please attach additional pages if needed.** *(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: _7/29/2013_   Action: _Discharged by Heather Bias-Holland, SVP of HR_

Name and Title of Person(s) Responsible: _Heather Bias - Holland_

B. Date: _7/29/2013_   Action: _WRONGFUL TERMINATION_

Name and Title of Person(s) Responsible _Heather Bias – Holland_

**6. Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

_FALSIFIED Documentation ; malicious INTENT, Retaliation + termination to prevent payments_
_RACE and Gender Related Violations, and Unjust + unnecessary retaliation against BLACKS._

**7. What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

**8. Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Mary Ann Nissen Caucasian Female | | Director of Employee Relations | Preferential |
| Perks, Bonus, Collaborations, Promotions | | | |
| B. Jessica Eth Caucasian Female | | Director of Training | Preferential |
| Eligible to work, remain off-site, Perks, Bonus, Collaborations, Promotions | | | |

2

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

Full Name      Race, Sex, Age, National Origin, Religion or Disability    Job Title       Description of Treatment

A. _Crystal Evans   Black Female_ _____ _Contractor_   _Termination_

_Unfair employment practices; malice intent not to convert to Permanent Employmen_

B. _Denise Fudrini   Hispanic Female_ _____ _Benefits Manager   Termination_

_Created a Hostile and Retalitory Work Environment, Defamation of Character_

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

Full Name      Race, Sex, Age, National Origin, Religion or Disability    Job Title       Description of Treatment

A. _____

_____

_____

B. _____

_____

_____

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

**9. Please check all that apply:**
     ☐ Yes, I have a disability
     ☐ I do not have a disability now but I did have one
     ☐ No disability but the organization treats me as if I am disabled

**10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything?** (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____

_____

_____

**11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?**
     ☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

_____

**12. Did you ask your employer for any changes or assistance to do your job because of your disability?**
     ☐ Yes ☐ No

If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask? (Provide full name and job title of person)

Describe the changes or assistance that you asked for: _____

_____

How did your employer respond to your request? _____

_____

3

**13.  Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. Crystal Evans | Contractor | 646-302-6958 | Discriminatory occurences |
| B. Walter Brown | HR Associate | 917-991-5998 | Verify actions and incidents regarding various forms of discrimination |

**14.  Have you filed a charge previously on this matter with the EEOC or another agency?**  ☐ Yes  ☑ No

**15.  If you filed a complaint with another agency, provide the name of agency and the date of filing:**  N/A

**16.  Have you sought help about this situation from a union, an attorney, or any other source?**  ☑ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.**  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

**BOX 1**  ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  **I also understand that I could lose my rights if I do not file a charge in time.**

**BOX 2**  ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_Sharon Telfair_
**Signature**

_March 13, 2014_
**Today's Date**

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)

3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 570-2014-00853 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) **Ms. Sharon Telfair** | Home Phone (Incl. Area Code) **(570) 801-0101** | Date of Birth **04-05-1967** |
|---|---|---|

Street Address   City, State and ZIP Code
**5204 Eagle Ridge Drive, Scotrun, PA 18355**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name **LE PAIN QUOTIDIEN** | No. Employees, Members **500 or More** | Phone No. (Include Area Code) **(212) 359-9000** |
|---|---|---|

Street Address   City, State and ZIP Code
**434 Broadway,  3rd Floor,  New York, NY 10013**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address   City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest       Latest |

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER (Specify)

Earliest **01-04-2013**   Latest **07-29-2013**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am Black.  I am female.  I am over 40 years of age.  I was initially employed as a contract Payroll Manager.  My date of hire was August 20, 2012.  At the time of my discharge I was the Director of Human Resources Administration.  I allege Respondent has subjected me to unlawful discrimination because of my race, age, and in retaliation for complaining about unlawful discrimination.  The details are as follows:

I allege I have been subjected to race based discrimination with respect to salary and other compensation.  Respondent presented me with a contract that discriminated against me in salary, bonuses and stock options when compared to similarly situated non-Black, directors employed by Respondent.  Upon information and belief, as further evidence of discrimination, Respondent paid me at a lower salary when compared to other Human Resource Directors within the industry and in the geography I worked.  On or about January 2013 I complained directly to Heather Bias Holland about the discriminatory treatment.  Subsequent to my complaint the discriminatory treatment continued and Respondent subjected me to retaliation.  Respondent discharge me on July 29, 2013.  I allege the reason for my discharge is pre-text for unlawful discrimination.  In addition to the

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT *Amanda Jones* |

June 3, 2014   *Sharon Telfair*
Date          Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
June 3, 2014

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
AMANDA JONES, NOTARY PUBLIC
MT. POCONO BORO, MONROE COUNTY
MY COMMISSION EXPIRES SEPT. 04, 201

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **570-2014-00853** |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

discharge Respondent continues to not compensate me for $174,600 in services rendered.

**I allege the foregoing constitutes unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended (TVII) and the Age Discrimination in Employment Act (ADEA).**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
AMANDA JONES, NOTARY PUBLIC
MT. POCONO BORO, MONROE COUNTY
MY COMMISSION EXPIRES SEPT. 04, 2017

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT *Amanda Jones* |
| *June 3, 2014*          *Sharon DeJesus*<br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>*June 3, 2014* |

Facts

Wrongful Termination

Retaliation and Sabotage :

- Thy termination was based upon poor performance
- My first and only performance given was issued less than 20 days prior to my dismissal
- A response to the performance review was requested. I was given less than 24 hrs to respond to a 5 page review and provide supporting documentation. The termination was issued prior to the 24 hour period. The alleged poor performance was designed to create and Obstruct the deliberate misconduct of the SVP - Heather Holland (Bias) and staff.
- Termination also resulted in the Workplace violation which I reported to the Executive Board incl. Owners, Heather Bias Holland, Vincent Herbert, Thomas Hallen, Alain Coumont.
  ↳ I reported critical and illegal workplace violations pertaining to FEDERAL & State Laws —
  Employers sought to cover-up.

- Employer ( he Pain Quotidien) Violated their handbook on procedures for performance issues and misconduct / terminations

Sharon Iwfair 7/7/2016

Defamation of Character

- During my employment, Heather Bias Holland has Wrongfully accused me, defamed my reputation amongst Colleagues, team members, and external vendors

  → Evidence of the defamation(s) / accusations have been listed in the performance review which was fully refuted.

  → The defamation was of a malicious Salander and libel nature, of which Witnesses and statements can be obtained.

  → The statements and allegations made on behalf of Heather Bias Holland were damaging, untrue, and cruel.

  → Defamation and Retaliation began during Jan 2013 whilst employment contract negotiations.

Dharm Telfair 7/7/201

Discrimination based upon RACE and SEX

→ I was informed by Heather Bias HOLLAND, I would be offered the Director of HR Administration however, because I was black and JESSICA Eth and Mary Ann Nissen were Causian, they would feel uncomfortable reporting to me ("because I am BLACK"). As a result Both Mary Ann & Jessica were given upgraded titles (Manager to Director) and subsequently reported to Heather directly. Ironically, Mary Ann had no HR Experience, Heather requested I train her and allow Mary Ann to attend my HR (weekly) meetings to familiar her with HR processes.

→ Bonuses (Annual & Sign-On) were given to both Male and Female Caucasian — Per Heather, I would not be receiving a bonus. I was her only direct report that did not receive a bonus.

(Causasian Male)
→ One of our upper level Directors went on a drinking binge → Did not come to work for 2 and 1/2 weeks. No shows, no calls. Upon his return, Heather has a meeting, we draft documentation, no probation issued / no action taken

Sheron Lefaire 7/7/20

Violation of Public Policy / Whistleblowing

→ My termination also violates public policy →
I emailed to advise, Heather Bias Hollan, SVP-HR,
Mary Ann Nisson, Manage/Director of People
Operations, and Jack Moran, Executive VP,
of illegal activities regarding hiring, firing,
Interviewing — non Caucasian candidates
A discrimination (clear) situation occured.
with an African American female — and
a Causian male manager. — Details can
be provided as well witnesses. I drafted
a report to the board — Eventually the
male (Causian) manager resigned and was
given severance and bonus payments
to support his discriminatory behavior

→ My refusal to support, participate, and
engage in this unlawful escalated
my termination


Whistleblowing:

→ I ~~adv~~ discovered and disclosed illegal
activity on behalf of LPQ. I immediately
notified LPQ defrauding the Federal
gov't was illegal.

Sharon St.Clair 7/7/2016

Whistleblowing

→ Actions were discussed on possible remediation
However, no corrections/corrective actions
were taken.
I notified some affected employees
and drafted a document to the
Social Security Administration regarding
the violations/infractions.

→ LPQ wanted to play the wait to see if
the ball dropped and was not proactive
about taking the appropriate corrective
measures.

Sharon DeYaw 7/7/2016

**From:** Stelfair <stelfair01@yahoo.com>
**To:** vherbert@pqus.com
**Cc:** MaryAnn Nissen <MNissen@pqus.com>; Heather Bias <hbias@pqus.com>
**Sent:** Tuesday, July 30, 2013 4:34 PM
**Subject:** Re: Meeting Recap / Performance Issues_From Sharon Telfair

Dear All-

As a result of yesterday's meeting with Heather and Mary Ann,

I have noted my responses below according to each individual item.

**From:** Sharon Telfair <STelfair@pqus.com>
**To:** "stelfair01@yahoo.com" <stelfair01@yahoo.com>
**Sent:** Monday, July 29, 2013 7:41 AM
**Subject:** FW: Meeting Recap / Performance Issues

**From:** Heather Holland
**Sent:** Monday, July 22, 2013 8:05 AM
**To:** Sharon Telfair
**Subject:** Meeting Recap / Performance Issues

Sharon,

I am following up on our meeting on Wednesday, July 3rd.  Below is a recap of what we discussed, as well as some new information that has come to my attention.  As you can see, these issues are serious and warrant a face-to-face discussion.  I have changed my vacation plans so that I will be in the office today to review these matters in person with you.  Please plan to meet with me at 3:00 p.m. this afternoon.

**ONGOING REPORTS**
To ensure a consistent flow of information between us, we agreed that you will send the following reports to me at the frequencies specified below.  We agreed that both weekly and monthly reports would be sent to me on Mondays.  Please begin generating these reports by **August 5th**.

- **New Hire Report - Weekly & Monthly.**  A new hire report separated by our two company codes listing: name, job category, store, position, salary, bonus potential, any other bonus (if applicable) and hire date.   Sharon Telfair

Yaniris and Walter were assigned the tasks of running the new hire reports every Monday for weekly reports to capture the previous week's headcount and on the 1st of every month to capture the previous monthly new hires. I placed a New Hire folder on the HR portal which contained the information and could be accessed by any HR Team Member. - Sharon Telfair

- **Loss Run Report - Weekly & Monthly.**  A loss run report almost identical to the current one generated every Monday, except that accident description will be included.  You will also include pie charts, showing accidents by market and accidents by type.

The request to amend the Loss Run Report was made to SOI via email. – Sharon Telfair

- **People Support Ticketing System - Weekly.** To better understand the nature of the issues coming into the HR Admin Team and the time it takes us to resolve and close cases, you will begin generating a weekly case report from the ticketing system.
- **Unemployment TALKS Reports - Weekly.** You will generate a weekly case report showing all of the unemployment cases currently open, with status notes.
- **Project List - Weekly.** To improve our communication about what you are working on, you will send a weekly project report listing all of the projects you are working on, with progress comments. If I have any questions, I will schedule a meeting with you to review. If you need my input on anything, you will schedule a meeting with me.
- **NEW: SOI and ADP Billing Report.** Please also begin preparing a report showing the billing detail for SOI and ADP. On this report, please show a line item for each service/product/tax/etc we are being charged for, then show in a separate column the rate we are being charged, and the contract rate we agreed to.

## ADDITIONAL DELIVERABLES

I shared three additional deliverables that I would like from you by the end of Q3:

1. **Team Organization.** A final org chart of the HR Admin Team, with role responsibilities and draft job descriptions for each member.
2. **Payroll Guide.** A How To guide for the payroll department. This should include a description of how to run that department, from soup to nuts, and include work flow processes and step-by-step instructions for all departmental tasks. (Note that every department in the support center will be asked to create this, and I would like to show yours as a model guide for people.)
3. **Risk Assessment.** A risk assessment for your area of the business: payroll and benefits. As we discussed in our meeting, I hired you because of your previous experience performing feasibility/efficiency studies, and the experience you discussed in our interview identifying areas of risk and creating solutions. I would like you to perform a risk assessment of the payroll and benefits teams, identifying areas of vulnerability that we should be aware of and solutions to fix the issues you identify.

## OTHER DISCUSSION POINTS

### Leadership Issues

As we discussed, members of your team have come to me with issues about the culture on your team and your treatment of various team members. This tells me that they are not comfortable addressing you directly. As leader of this team, I expect you to create a fair environment in which everyone is listened to, heard and treated equally. Several incidents that we discussed are serious enough to warrant mention in this recap:

- **Yaniris.** During our meeting, we discussed Yaniris' continued performance issues and lack of judgment (which became apparent in your absence). You explained that you are too busy to micromanage her and need someone who is more independent with better judgment. You informed me that based on her performance issues, you intended to terminate her on Thursday,

July 11th. After reviewing her file, however, Kathie and I noted that you had not had the promised progress evaluation with her, or any further progress discussions. I asked you to please hold a progress meeting with her, then provide her with a short time to improve. I asked you to send me a recap of this meeting, which I have not yet received.

**Let me be clear on what the goals were with the decision to hire Yaniris so that you and I are on the same page. If I am not mistaken, the idea was to bring a seasoned and independent professional on the team- one who could work without much management oversight; hence my use of the term "micromanage." Now having said that, Yaniris failed to perform up to those standards consistently as you noted to me on several occasions. The most recent being when you had to remove Yaniris from the RDO Meeting. My ultimate decision to terminate Yaniris on Thursday, July 11th was not based upon her performance issues which we previously discussed, but rather an email I received from you, Heather, regarding her performance and incompetence at the RDO meeting. These were two separate incidents that were totally unrelated. Up to that point, we discussed placing Yaniris on performance watch, similar to what you are doing to me now.**

**Now that I have segmented two distinct incidents, relative to incident number 1 (Yaniris' Performance Write Up), I advised you I had not given Yaniris a formal follow-up progress evaluation; however, I did inform her verbally that we were under 401K audit deadlines and would need to postpone the evaluation for later in the month. In the form of encouragement and leadership, I told Yaniris that I did note an improvement in her attendance. That is all I said to her verbally.**

**Then unfortunately incident number 2 occurred before the designated time. I was out of the office and you questioned my leadership for allowing her to go into the RDO meeting. I replied to you that I had no knowledge of any requested meeting, nor was any HR member on the agenda to participate in that meeting. If I had known of such meeting I certainly would have represented or prepared a member of the Team to present. It was precisely at this point where a discussion of immediate termination ensued.**

**So your reference to my not having the follow-up evaluation, which I tabled, was not regarding nor related to incident number 2, but incident number 1. Again, I wanted to clarify the two separate incidents so that we are on the same page.**

**If in fact the decision is made to terminate Yaniris, I agree that follow-up evaluations need to take place before we can move forward. - Sharon Telfair**

- **Jennifer.** During our meeting, you expressed your frustration with Jennifer. You felt that she was acting immaturely by expressing frustration that you moved Walter to the benefits team. You mentioned that you would not put up with Jennifer's "crocodile tears" or "play a violin" for her, among other statements. You became visibly angry and aggressive during our conversation when speaking of Jennifer and her conversation with me. You told me that Jennifer may "follow" Yaniris if she doesn't "shape up," and I understand that you recently asked Alyssa to place an ad for Jennifer's position. Sharon, I am alarmed by your aggressiveness and anger toward Jennifer. Up until recently, you have described Jennifer as the model team member — hard-working and knowledgeable, with great potential. In fact, based on your endorsement and insistence that we not lose her (you mentioned that SOI tried to recruit her twice), she received a raise, a bonus and a promotion. It was only after Jennifer lodged

concerns with me that your evaluations of her worsened.  Nothing you mentioned to me in any conversation to date has warranted termination, yet now you seem keen to terminate her urgently.  This appears retaliatory, and as her leader, I expect you to inspire and encourage JenniferʙȠ™s growth, and serve as a positive role model for her.

**I wasn't aware I was coming across as being aggressive or angry. I always attempt to come across professionally. I am not frustrated with Jennifer. I am frustrated with the amount of focus being placed on Walter's request to transfer to the Benefits Team. What I hoped would be a smooth transition with Walter into Benefits and Stella onto the Payroll Team - that was my goal.**

**Respectfully, your recap of the "crocodile tears" or "playing the violin" are taken out of context relative to Jennifer. My statement about the "crocodile tears" was: I told Jennifer it was difficult being a Manager and stressful, and as a newly appointed manager times like these would arise. I sentimentally told her to "dry her crocodile tears; never let the team or the public see you [Jennifer] break under the stress and let's move forward." That is what I repeated to you. The reason I want to clarify this is because your recap comes across as me being very insensitive and not supportive of Jennifer. Clearly, those are attributes and qualities as a leader that I would have some issues with if my subordinates came across to me in that manner. So to clear the air between you and me and so it never becomes an issue again, I want you to know that going forward, I would never come across as being insensitive or non-supportive of my subordinates or anyone else for that matter. I simply don't subscribe to that leadership style.**

**Also, you said that Jennifer had confided to you that she had turned down a position offered to her from SOI. I replied I knew of the offer, but was not privy to the terms. I suggested to you that at that point we perform a random search of payroll professionals to test the market in the event Jennifer walked out with little notice. You agreed, and I made the request for both Yaniris and Jennifer's positions to be posted. A recap of our discussion was if Jennifer did not want to remain part of the team, we needed to be prepared for her exit. I also informed you I would be having a meeting with the team to discuss any issues or concerns. I also forwarded to you a follow-up of the meeting via email. If you and I are having a management discussion about critical HR issues, how do you determine this to be of an angry or aggressive nature? I have been Jennifer's biggest advocate and staunchest supporter. How can you terminate someone when you have not taken any disciplinary actions against them? What actions have I taken of a retaliatory nature pertaining to Jennifer? This accusation is absolutely unfounded and untrue. For the past 11 months, I have inspired, encouraged and supported Jennifer throughout. Again, you question my leadership style on issues where, in fact, I have agreed with you and have demonstrated this. - Sharon Telfair**

- **Walter.** During our conversation, we discussed that your team feels that you are showing Walter favoritism.  In your absence last week, your team again approached me about this.  Among other things, they feel that you distribute more tedious and demanding work to the rest of the team (at

times even timing them to see how fast they enter data),
while allowing Walter to focus on "fun", social projects.
They also feel that you give Walter special perks that the
others do not receive.  After looking into these issues last
week, you have indeed broken protocol and given Walter
perks that no other entry level employee at LPQ receives.
First, without my permission, you authorized IT to assign
the HR team iPhone - which was supposed to be available
to the entire team for after hours and weekend work - to
Walter for his dedicated use.  You explained in your email
on July 19th that vendors need to reach him, however, no
vendors should expect to reach anyone on our team after
hours and on the weekends.  If Walter needed a phone for
health and wellness events, he could have checked out the
team phone.  We now have no team phone, and I am in the
awkward and uncomfortable position of having to rescind a
perk from Walter to restore fairness to the team.  Second,
several months ago, you asked if we could change Walter's
title to "health & wellness coordinator".  I was very clear
that we do not have a budget for such a position, and that
he needs to perform the payroll and benefits duties we hired
him for.  I did say that because of his passion for wellness,
we could consider moving him in that direction
in the future.  Without my permission or any further
discussion, you then authorized business cards to be printed
for Walter using the title "health & wellness".  This is
against protocol for entry level positions and has caused
disruption on your team.  Again, I am left in the position of
having to make difficult decisions in order to restore a
sense of fairness to the team.   I am disappointed in

these decisions, which were unprofessional and reinforced a perception of favoritism on your team.

**Favoritism or partiality has not been shown or extended to Walter on my behalf or during my tenure. Walter is the lowest paid team member and third longest hire next to Jen and myself. Walter has been given assignments commensurate with his grade and salary. It is common practice that individuals on a team who make more and are of a higher grade should receive more challenging assignments - don't you agree? How can you justify giving the same amount of work to an entry level team member, as you referred to him, when he makes less than other members on the team?**

**Walter's focusing on social projects was a result of the initiatives that came after you and Vincent said that he would be the ideal person. When I came onboard to LPQ last August, Health and Wellness did not exist.**
**I was not the driver of the Health and Wellness initiatives. Therefore, your mention of me allowing Walter to focus on the "fun" social projects is untrue and inaccurate. I did not select Walter for the Health and Wellness initiatives. I supported the initiative because it came down from the Executive Team. Jennifer also referenced you and I going over her head pulling him into the Health and Wellness meetings without her knowledge. Hence Jennifer's lack of managerial experience would explain why she did not recognize you and I are "over her head" in rank and position. Business Plans constantly change – it's called Business!**

You and I have discussed Health and Wellness and future events with LPQ.

The question is: why am I being challenged when the directives on Health and Wellness came from the Executive Team?  I have had passive involvement in the Health and Wellness initiative at best.  I have monitored and reviewed Walter's Health & Wellness assignments to ensure completion.  Let's be clear, the "fun" social assignments came from the Executive Leadership.  My involvement was passive from the inception.  Since we are discussing fairness, -don't you think that's unfair??  My involvement was authorizing a Health and Wellness business card which does not have a title or position listed but which you have noted as a "perk"; to be used as a business tool and is not a "perk" as you referred to it in your email.  What would you had preferred I do; have Walter write his name on an LPQ napkin to better represent the company externally? Having said that, let's discuss "perks".  I've already discussed the fact that a business card is a business tool and not a perk.

Let me explain to you what I mean by a perk.  I define a perk as something that has value to the recipient for which there is personal gain.  For example:  You get an annual bonus every year - that's a "perk!!!".  You get stock ownership options - that's a "perk!!!".  Getting a cell phone to use for the purpose of work during non-business hours is a "BUSINESS TOOL".  I make this clarification because you and I have two different notions of what a perk is, especially as it relates to Walter.  You refer to them (the cell

phone and business cards) as "Perks" and I refer to them as Business Tools.  There is a disconnect here. <u>Unfortunately, I have to stand by my definition of a "perk".</u>  More importantly is the issue of fairness behind the usage of Business Tools that were approved.  I don't see how I can be questioned on the fairness of a "perk" when I did not consider the business tools to be a "perk".  That's a bit of a stretch for me and I wish you had come to me to have this discussion directly, as opposed to documenting it in a performance write up which you said and confirmed yesterday had a "slant" to it.  So that we have a third impartial definition, I have pulled the definition of a "perk" from the dictionary which states:

1.  A benefit given to an employee in addition to a salary example a membership in a club. Synonyms: Bonus, Incentive, Advantage, Extra, Sweetener, Plus Point, Privilege, Gratuity, Freebie.  What incentive does a telephone have other than to answer it and do work?

In summary, I did not break any protocols because I have not given Walter any perks.  Furthermore, neither you nor anyone else on the Executive Team had ever told me either verbally or in writing that such Business Tools were considered a "perk". Therefore, how could I be violating a nonexistent protocol?

Walter has his own phone for his dedicated use.  He does not need LPQ's.

I asked for volunteers at an HR Meeting to take ownership of the telephone. All Team Members declined with the exception of Walter to be in charge of the telephone for business purposes.

Prior to Walter, IT records indicated Denise had the telephone. What was the protocol for this? It seems the team is taking such an insignificant item and coming to you for no apparent reason. To be clear, if any team member needed to utilize the telephone, it was always available and they could follow up with Walter. Did any team member come to you when Denise had the telephone? It is making a mountain out of a mole hill when the focus should actually be on the work of the team. I don't control when vendors contact team members. What is the purpose of the business telephone? The telephone has always been available for after hours and weekend work. We have 1 person who is responsible for the telephone at all times and if another team member needed to use the telephone, then they should see Walter. I am certain Walter will not be disappointed and will gladly return the telephone to you, whereby you can keep the telephone on your desk in your office and have team members sign it out. It can be an executive perk.

In summary, I am disappointed that you consider these to be perks and you are now left in a position of having to make a difficult decision in order to restore a sense of fairness to the team. Secondly, I am disappointed that you feel my decision was unprofessional and reinforced a perception of favoritism, because I have been more than fair to my team. If anything, Walter has received the short end of the stick. I say that because the "perks" you mention have been

received by other team members in the form of constant excused tardiness, late arrivals, the ability to work remote; amended schedules for day care or sick children. These are "perks" and allowances that have given to Walter's team mates. While he has not received any benefits nor requested any "perks" as you have mentioned, it's unfair that he should be in the office and accounted for when his team mates have received allowances and "perks".

More importantly, I have the documentation to show who receives what I would consider to be perks. I am appalled they would come to you with such minutia. In fact, I find it even more appalling that you didn't send them back to me, rather than entertain them when they have clearly been the benefactors. Next time you have a conversation with Walter, ask him how many requests he has made to work remotely. Walter has <u>never</u> exercised the allowances that his team mates have.

**I noticed you increased the font size when it came to your point discussion of Walter. I don't know if you were yelling at me or just trying to bring it to my attention or this particular issue required more attention than any of the other issues you raised. I presumed you were yelling at me. I want to make it clear, I am not yelling at you in my response by using a larger font size, I just want to be certain I am consistent. If you meant this to be an attention-getter, then Kudos! it was effective and certainly got my attention. – Sharon Telfair

<u>Performance Issues</u>

As we discussed, there are a number of other performance-related issues that I expect you to improve immediately. Those issues are recapped below:

- **Remote Working Days.** I shared with you that I feel your remote working days are becoming disruptive for your team, and are setting a difficult example for the rest of the support center. I shared that going forward, remote working days will be limited to 2 per month, which must be scheduled prior to the start of each month and approved by me. Remote working days will be limited to directors and above only. This expectation will be announced to the entire team. You shared that you sometimes have difficulty concentrating, which is why you work from your home office. I agreed that when I am traveling, you may use my office if need be.

**The working remote issue we addressed previously. I am unclear as to why it reappeared. I have not worked remote since and was baffled as to the inclusion. To again clarify a point with you regarding your statement of my having "difficulty concentrating". What I said to you was that I was working on a Worker's Comp Project which required my utmost attention to detail because the carrier referenced questions and figures which required my research. Your response to me was "I don't mind working in chaos and I could utilize your office." I was agreeable to that, so I don't see why it's noted here since it is not a performance issue if we had an agreement. Furthermore, you specifically pointed out my working remote was setting a difficult example for the rest of the Support Center. Why are you singling me out? All of a sudden it has become an issue. Have your Reports (Directors) not worked remote or in the stores? I cannot believe I am the only one who works remote. It's not a policy I put in place. More importantly, it was a "perk" which you noted in my employment negotiations giving me permission to work remote for 1 week in DC. - Sharon Telfair**

- **Vacation.** I shared with you several times that it was highly unprofessional of you to inform me on a Monday that you planned to take a 2-week vacation beginning Wednesday (and would be working remotely that Monday and Tuesday). Apparently, you did this out of frustration that a business trip to Paris was cancelled. This is unacceptable. Going forward, vacations must be requested in writing at least 2 weeks in advance - preferably more - and approved by me in writing. This expectation will be announced to the entire team as well.
- **Overtime.** At your insistence, we have staffed up your team to 6, so that overtime is not necessary. Yet as I mentioned in our conversation, I received complaints that you recently allowed Walter вЂ™ but no one else on the team вЂ™ to work overtime. To be clear, overtime should no longer be necessary going forward. All overtime requests must be submitted to me in writing prior to anyone working any overtime hours. Overtime will only be granted if there is an urgent business necessity.

**I challenge your statement of allowing only Walter to work Overtime. I have not been partial to Walter working overtime. If you reference the timesheets, you will see - all HR Team members with the exception of Jennifer and I have worked overtime. No one has been partial to Walter in this regard. The timesheets speak for themselves. If after you review the timesheets there's evidence of me being partial to Walter, then your comments noted in your email are warranted. But you will not find that. The audit trail will speak for itself. That is one issue. I agree that being staffed at 6 is not necessary and I have communicated that. For our normal duties no overtime should be**

granted; however, for specialty, training and one-off projects is where the overtime is being used. We are at capacity for the normal daily operations excluding specialty projects.

**I spoke with the entire HR Team regarding reducing overtime due to the increase of staff.  I sent Jennifer an email outlining the criteria for overtime going forward. I also told Jen that her payroll team consisted of 2 full-time employees and a third, including herself, and I could NOT justify their overtime as she had processed payroll by herself with no additional support and resources. – Sharon Telfair**

- **Working Hours.** The support centerвЂ™s work hours are from 9 to 6, Monday through Friday. During summer Friday season, hours are from 8 to 6, Monday through Friday, with every other Friday off.  Unless there is a pre-approved alternate arrangement, we must respect these hours. Any alternate arrangements must be requested in writing and submitted to me.  At your request, I will announce this expectation to the entire team.
- **Issue Resolution.**  I discussed that you have repeatedly referred to LPQ as вЂњa messвЂќ and talked in vague terms about unspecified lawsuits that we should be concerned about.  I reminded you that the very reason I hired you to join the senior leadership team was to help us identify problems and fix them.  I emphasized that it is not enough to complain about problems that you see at the company - it is your job to articulate them in a professional manner and develop corresponding solutions and implementation plans.

**I did not refer to LPQ as a "mess."  When I used the word, I was specifically referring to the 2010 and 2011 findings and clean up.  I referred to lawsuits based upon calls from active and terminated employees who threatened to sue LPQ if the files/social security numbers were not corrected.  For the better part of this year I have been correcting social security numbers from 2011 and 2012. I have not corrected 2010. These projects are "messy" and time consuming. I have never said that LPQ is a mess, but there are specific projects for which I believe LPQ is at risk.  The proof of the pudding is in the filling, which I am sure you know as an attorney.  I appreciate the opportunity you gave me and I feel I have been working to the EXACT end that you describe. Please be mindful I have been with LPQ for 11 months, of which the first 7 months was as a consultant, and the ensuing 4 months has been as an employee.  I think you will agree that it takes some time to grow into these positions and I was headed in that direction until I received your performance-related email. – Sharon Telfair**

Lastly, I am compelled to mention my extreme frustration and disappointment with the tone and substance of a number of your recent written and oral communications with me, your peers and other members of the HR team.  I am concerned that certain communications, such as our recent exchange on July 3, contains mischaracterizations and/or inaccuracies.  Several of your emails also strike an unprofessional and aggressive tone, and as discussed, it has come to my attention that you repeatedly have made disparaging comments about your colleagues (including me).  This behavior is simply unacceptable at LPQ вЂ" let alone for an HR professional вЂ" and will not be tolerated.

**This is the first time I am hearing of disparaging remarks supposedly made by me regarding my colleagues. – Sharon Telfair**

**Ever since I came on-board, my focus has been the success of LPQ and my team. This is the first time in my professional career that I have ever been called on the carpet for such trivial matters. – Sharon Telfair**

In summary, the issues you've raised pertain to my effectiveness as a team leader and as part of the senior management team.  Your perceptions of my abilities in this regard, clearly are not favorable.  I've always considered myself to be a balanced, impartial, fair, communicative manager/director who focuses on the success of the organization and team under my leadership.  I hope you'll see through my responses to the specific points you've raised that my decisions have not broken any protocols (stated or unstated) and have been fair across the board.  If you think after reading my responses that any of the issues, particularly ones relating to fairness or the decisions that I have made, are not in line with how you might have handled these situations, then I am open to suggestions as to  a better way to approach these types of issues going forward.  I apologize it has taken me a while to respond to this email and the things discussed yesterday; but the issues you raised in your email require review and attention to every detail. –Sharon Telfair

I didn't want to respond hastily, but wanted to carefully give thought to the issues you raised.

P/S:  I have the supporting documentation discussed yesterday which took me a better part of the day to compile.  I was not able to compile all documents prior to the end of the day which is why you are now receiving this. – Sharon Telfair

Please be advised that I expect to see immediate and sustained improvement in your performance in these areas, in order to continue your employment with LPQ.  Please plan to meet with me on August 5th at 9:30 a.m. to discuss your progress.  In the meantime, should you have any questions, feel free to call or email me.

--Heather

Heather Holland
EVP - Global People, Training & Development

**Sharon Telfair**

From:           Sharon Telfair
Sent:           Monday, May 20, 2013 5:05 PM
To:             Heather Holland
Subject:        Re: Heather / Sharon Weekly 1:1


Ok for the calendar invite. Will accept momentarily.

No refund in the tix - no certain about exchange.


Kind regards,


Sharon Telfair
HR Director of Administration
Le Pain Quotidien
(347) 387-7274


Pardon Any Typos/Errors


On May 20, 2013, at 3:32 PM, "Heather Holland" <hholland@pqus.com> wrote:

> Hi Sharon - I sent a calendar invite for Thursday at noon New York time - did you receive it?  I am in London from
Wednesday evening through Friday morning, then Paris through Tuesday.  I will be accessible via phone and email.
>
> Also, please send the itemized expense form for my approval. Did you refund the tickets or postpone the trip?  Either
way, we will reimburse what you came out of pocket for.          *I have yet to be reimbursed.*
>
> Finally, please send your vacation request to me through ADP.
>
> Thanks,
> Heather
>
> -----Original Message-----
> From: Sharon Telfair
> Sent: Monday, May 20, 2013 10:25 AM
> To: Heather Holland
> Subject: Re: Heather / Sharon Weekly 1:1
>
> Good Morning Heather-
>
> Do let me know date and time you would like to schedule the 1:1.
>
> Also I need to send to you for approval an itemize expense form. As the Paris trip has been cancelled and I had
committed myself to various, I will need the company to reimburse. Are you around this week or will you be in Paris?
>
> Lastly I would like to take a vacation; shall I submit my leave directly to you. Please advise so that I can make other
arrangements in a timely manner.  Thank you.
>

1

> Kind regards,
>
> Sharon Telfair
> HR Director of Administration
> Le Pain Quotidien
> (347) 387-7274
>
> Pardon Any Typos/Errors
>
> On May 20, 2013, at 9:13 AM, "Heather Holland" <hholland@pqus.com> wrote:
>
>> Morning Sharon – Hope you have a very productive time in North Carolina this week.  Let's reschedule our 1:1 for later in the week when you're back. I imagine we'll have a lot to discuss at that point.  Thanks, Heather
>>
>>
>> Standing Agenda:
>>
>> •    Payroll
>> •    Benefits
>> •    Reporting / HRIS
>> •    Team
>> •    Other
>>
>> <Heather _ Sharon Weekly 1:1>

**Sharon Telfair**

| | |
|---|---|
| **From:** | Sharon Telfair |
| **Sent:** | Wednesday, November 21, 2012 2:11 PM |
| **To:** | Heather Bias |
| **Subject:** | HR (Payroll & Benefits) Meeting_11/21/2012 |

Good Afternoon Heather-

Payroll/Benefits had our year-end meeting this morning.  Do note the recap of items addressed below:

**Denise:**

- Benefit Deliverable ⊦— Reports for SOI/ADP
- Medical Insurance Refund Project – year end
- 401k Audit Update – December 3, 2012
- Worker's Comp Audit – week of December 10th – 14tg
- New Store Openings – New Hires/Benefits
- Shoes for Crews Update
- Operations Performance Reviews – Update
- Train Crystal on Micros and Documentation of the Benefit Process

**Jen:**

- 2012 W-2 Processing Plan/Address and Delivery Update
- Continuation of ADP Implementation
- Tips Project (CA)
- Tax Project (DC/MD/VA)
- Discretionary Manager Bonuses
- Gift card taxation
- Training – continuation with Walter for Micros/Payroll /

**Walter:**

- Garnishment
- ADP Reports
- Timecards and Payroll Processing
- Terminations
- Employee File Maintenance
- Labor Posters
- Orientation Assistance
- Miscellaneous Projects/Assigned Tasks

**Sharon:**

- Employment Verification
- SOI Implementation
- Year End Processes
- Wells Fargo Updates

# WHAT IS HR ADMINISTRATION??



1.  **Planning**
    - **Thinking and Determining In Advance what should be done, how to do it, when to do it, and whom should do it.**
    - **Determines where an organization is compared to forecasting where it wants to be.**
    - **Involves establishing both short and long term goals and arranging them in logical order.**

2.  **Organizing**
    - **Identifies responsibilities to be performed.**
    - **Coordinate efforts and goals within a group or team environment.**
    - **Strives for a problem free – distressful environment.**

3.  **Staffing**
    - **Is essential.  It requires assessing the team needs and recruiting the right talent for the right position at the right time.**
    - **Entails creating accurate job descriptions and balancing the team/department workload.**

4.  **Directing**
    - **Involves leadership – " taking ownership" and managing the process.**

- Requires the proper allocation of resources
- Also provide a structured support system
- The challenge of directing is obtaining the balance between your team's needs and obtaining optimal production and efficiencies.

5. Controlling
- Evaluates quality and explores potential hazards or defects with regard to plans and goals.
- Ensures satisfaction, measures performance, and corrects inaccuracies.

6. Compliance
- Reduces Costs
- Manages Risks
- Increases and Protects Revenue

Revenue:  Some view HR Administration as a back office clerical/administrative function of an organization vs. a revenue generating department; however HR Administration is your first line of defense for revenue because compliance, control, directing, staffing, organizing, and planning directly or indirectly protect the organization's revenue.

## HR ADMINISTRATION = COMPLIANCE = REVENUE

# 2013 QUARTERLY PROJECTIONS

| Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|
| **Assessment and Planning Phase** | **Health and Wellness Development and Payroll System Maintenance** | **Employee Awareness Benefits Review** | **People Pulse Reporting and Healthcare Reform** |
| • Focused on 2012 finalization of outstanding items to include SOI payroll system implementation.<br><br>• A Workers' Comp Analysis was performed. The following safety protocols were implemented regionally: Shoes For Crews, Cut Gloves, Manager Safety Check List and most recently the issuance of Back Braces.<br><br>• A feasibility study was performed of the HR Team Organizational Structure, Area Workflow | • People Support Call Center which features both an online tracking system for ticketing and reporting as well as a centralized 24 hour call service center for all employees. This service can be utilized via 1-855-4LPQPPL or email @ peoplesupport@pqus.com<br><br>• We feel strongly your Health is your Wealth and we want LPQ employees to be proactive about their health | • We are proposing to implement an Employee Appreciation Day to run congruently with the Summer Party. Presently we have 13 Support Center Staff Members who have been employed between 5 and 10 with LPQ. Of Course Vincent and Allain hold the record with 10 years of service. HR would like to recognize and present the awards of service this summer for all employees who have increments of 5 and 10 years of | • In October 2013 a survey will be forwarded to the LPQ Community. The purpose of the survey is to measure HR's performance and obtain the pulse of the people regarding employee satisfaction. The results will also be used as a benchmark for 2014 projects and assessments.<br><br>• Preparation of the HealthCare Reform<br><br>• Identify and Increase effective communications throughout LPQ |

| | | | |
|---|---|---|---|
| process, and future redesign and reorganization within HR. | • The Wellness Fair is scheduled for Friday, May 10 from 1 to 5 pm at the 3 Park Training Center. This project was funded utilizing funds from a 2012 Healthcare Rebate. The goal is to establish this as a reoccurring annual event in all three regions.<br><br>• Evaluating the TIMMS (Time Mgmt System) which features an online scheduler. The primary features include the ability to properly track labor, retain historical data, and apply OT rules for multiple states. TIMMS is transferable and provides reporting capabilities.<br><br>• Payroll System Maintenance – We are working with all departments to | service.<br><br>• The goal is to develop what will be LPQ Milestone Recognition Program.<br><br>• HR has received suggestions for Community Service Projects. The upcoming community service project for the 3rd quarter which was suggested by James Lohan will be "A Day in the Dirt" in Central Park<br><br>• HR will be performing a Personnel file compliance audit. The audit will entail a comprehensive federal and state regulatory review of all employees' file. HR will also be researching an electronic filing/storage system. | |

ensure all employees are properly aligned and coded correctly in ADP, SOI, and Micros.

System Security and user access and ADP module upgrades are being performed. The Goal is to reduce the bottlenecks in the system and to ensure user accessibility.

- Benefit Enrollment – Effective January 1, 2013 we obtained a new Broker group – The Lockton Group. HR Benefits Team is currently in the process of preparing for opening enrollment season which is scheduled for May 17th – June 2nd. (English and Spanish) notification posters have been distributed to all stores.

| | | | |
|---|---|---|---|
| | <ul><li>**ADP Online Enrollment System Testing is scheduled for the week of May 20th.**</li><li>**ALL Projects for Q2 have completion dates of May 15th and or June 30th**</li></ul> | | |

Reply     Reply to All     Forward

## Director of HR Administration - Role Description & Offer

You replied on 2/5/2013 10:13 PM.

Heather Bias

**Sent:**     Tuesday, February 05, 2013 6:51 PM
**To:**     Sharon Telfair

**Attachments:**     ROLE DESCRIPTION - Direct~1.docx (982 KB) [Open as Web Page]

Hi Sharon – Further to our discussion on Friday, attached please find a role description for the Director of HR Administration (US) role, outlining Key Result Areas and related objectives/activities. Also, below is a compensation offer for your review and consideration, in light of the job description. I hope you find these terms acceptable, and look forward to discussing and finalizing them with you on Thursday. Once we reach a meeting of the minds, I will prepare an official offer letter for your review and signature.

As you know, I regard you as a valuable member of our team, and I see you as a critical player in the company's HR strategy in the coming years. I have already grown to appreciate your professionalism, optimism and leadership, and hope that we can officially welcome you to the family soon! Cheers, Heather

- Base = $120,000
- Bonus potential = 30% of base ($36,000, guaranteed for 2013)
- 2012 bonus = $15,000
- Learning & development = $5,000
- Vacation = 4 weeks
- Waiver of 90-day benefits waiting period
- Company issued laptop and iphone

1) 20% Telecommuting

2) 401k Funding + net bonus payments 2012. / Guaranteed 2013 Bonus. → net pym

3) Per Diem of $500.00 pp.

4) Severance Package → (Remove)

5) Salary [$135,000]

# Director of HR Administration (US)

ROLE DESCRIPTION | MISSION, KPA'S & OBJECTIVES

## MISSION

To lead a team of professionals in providing Human Resources services that facilitate the company's growth and that support the day-to-day LPQ operations in the United States.

## KEY RESULT AREAS &OBJECTIVES/ACTIVITIES

1. Payroll Administration
   - Oversees all aspects of payroll processing, administration and compliance.
   - Develops and manages key relationships with the company's Professional Employer Organization or payroll processing provider.

2. Benefits & Compensation
   - Manages the US compensation system and practices.
   - Oversees the management of employee health benefit providers.
   - Provides feedback to help modify company initiatives and benefits programs to ensure they remain competitive.

3. HR Compliance
   - Ensures compliance with employment laws and practices.
   - Ensures HR data is current and accurate.

4. HRIS & Reporting
   - Works with internal and external resources to effectively implement Human Resource Information Systems.
   - Provides Human Resources business intelligence to appropriate internal and external parties.

5. Team Development
   - Works with direct reports to establish goals consistent with their role descriptions that support Le Pain Quotidien's strategy.
   - Monitors the performance of direct reports toward their goals.
   - Gives informal feedback regularly to direct reports.
   - Conducts annual performance reviews for direct reports.
   - Coaches, develops and serves as a resource and role model to direct reports.

6. Company Culture
   - Assists in recruiting and selecting team members who share Le Pain Quotidien's values, beliefs, and norms.
   - Communicates Le Pain Quotidien values, beliefs, and norms to employees.
   - Serves as a role model for Le Pain Quotidien values.

## JOB SCOPE

Reports To:   EVP of People, Training & Development
Reports:   Benefits Administrator/Manager, Payroll Administrator/Manager, clerk(s)

February 2013

Dear Heather-

As per our employment discussion on Friday, February 1, 2013, please note the responses below:

**Compensation Factors:**

Comparing staff managerial duties and responsibilities is not a baseline for establishing or designing salary or staffing. Guidelines for establishing compensation include the following:

- Job Related Experience
- Training Time Required
- Utilization of Independence
- Frequency of Review of Work
- Analytical Complexity
- Time Spent Processing Information

**Employment Options:**

**Option 1:**   Retain contractor status for the period of March 1, 2013 through March 31, 2015.  Le Pain Quotidien will be billed a monthly invoice at the rate of $95.00 per hour.  This will be a true contractor position.  The Contractor will not be remunerated via LPQ payroll. The Contractor will be responsible for remittance of all statutory deductions. A separate contractor agreement will need to be created.

**Option 2:**   ~~Designate/create 2 separate manager positions – HR Manager and Payroll Manager according to the People Report as opposed to one HR Director.~~

**Option 3:**   Convert to a company employee contingent upon the negotiation of an employment agreement.

**Job Description:**

To Be Forwarded to Sharon Telfair from Heather Bias